<b><u>FOR PUBLICATION</u></b>

UNITED STATES BANKRUPTCYCOURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                              :        Chapter 7

In re:

                                              :        Case No. 05-38353 (cgm)

        JENNIFER C. QUACKENBUSH,

                     Debtor.

------------------------------------------------------------X

<b>MEMORANDUM DECISION ON OBJECTION BY<br>
<u>CHAPTER 7 TRUSTEE TO DEBTOR'S CLAIM OF EXEMPTION</u></b>

<b><u>A P P E A R A N C E S</u>:</b>

Thomas Genova, Esq.
Genova & Malin
Hampton Business Center
1136 Route 9
Wappingers Falls, New York
*Chapter 7 Trustee*

John J. Fallon, Esq.
McAdam & Fallon, P.C.
90 Scofield Street
Walden, New York
*Attorney for the Debtor*

**CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE**

       Debtor filed this Chapter 7 case on October 11, 2005 and claimed as exempt her

interest in a "Fidelity Destiny I0-0" account. The Chapter 7 Trustee has objected to the

exemption. For the reasons set forth below, the Chapter 7 Trustee's objection is

sustained.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(B) ("allowance or disallowance of claims against the estate or exemptions from property of the estate").

**Background**

The Debtor claims an exemption on Schedule C of her petition in a "Fidelity Destiny I0-0" account in the amount of $3,152 (hereafter, the "Account"). The Account application indicates that the Account was created as a "Fidelity Systematic Investment Plan" on March 19, 1989 by Lee T. Quackenbush, the Debtor's father, and is in the name of "Lee T. Quackenbush, as Custodian for Jennifer C. Quackenbush under the NY Uniform Gift to Minors Act". The Debtor and Chapter 7 Trustee agree that Lee T. Quackenbush donated all of the funds in the Account, and that the Debtor has never made contributions to the Account.

The Account application also states that the objective of the Account is "to accumulate Fund Shares for education." The Debtor asserts: "In the late 1990s, Thirty thousand ($30,000) dollars was withdrawn for the sole purpose of Jennifer C. Quackenbush's education." March 3, 2006 letter brief of John J. Fallon (ECF Docket No. 17). The Debtor also asserts that: "The funds [in the Account] have always been under the control of Mr. Quackenbush and solely used for education. As a matter of fact, Jennifer is presently a student at Orange County Community College." *Id.*

According to a statement dated December 9, 2005, the Account contains 278.8180 shares with a face amount of $4,800. The December 9, 2005 statement also indicates that

the custodian is State Street Bank & Trust Co. in Boston, Mass., and the sponsor/distributor is identified as Fidelity Distributors Corp., also located in Boston.

## DISCUSSION

This Court must determine first whether the Debtor's interest in the Account constitutes property of the estate and, if so, whether the Debtor can claim the Account as exempt property.

### I. Property of the Bankruptcy Estate

As set forth in 11 U.S.C. § 541, the filing of a bankruptcy petition creates an estate. Section 541(a)(1) states that "[e]xcept as provided in [Section 541(b) and (c)(2)], all legal or equitable interests of the debtor in property as of the commencement of the case" are included as property of the estate. A chapter 7 trustee is charged with the duty of collecting and reducing to money "the property of the estate for which such trustee serves". 11 U.S.C. § 704(1).

The Debtor does not allege that the Account is excluded from property of the estate under any of the grounds listed in Section 541(b) as the statute existed on the date the Debtor filed her Chapter 7 petition, and the five exceptions enumerated in Section 541(b) could not reasonably be construed to apply to the Debtor's interest in the Account.[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

---

[1] Section 541(b) states:

Property of the estate does not include --
  (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;
  (2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;
  (3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 (20 U.S.C. 1001 et seq.; 42 U.S.C. 2751 et seq.), or any accreditation status or State licensure of the debtor as an educational institution;
  (4) any interest of the debtor in liquid or gaseous hydrocarbons to the extent that--

("BAPCPA") which took effect on October 17, 2005 added subsection (6) to Bankruptcy

Code Section 541(b), exempting from property of the estate:

> (6) funds used to purchase a tuition credit or certificate or contributed to an account in accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986 under a qualified State tuition program (as defined in section 529(b)(1) of such Code) not later than 365 days before the date of the filing of the petition in a case under this title, but--
>
> (A) only if the designated beneficiary of the amounts paid or contributed to such tuition program was a child, stepchild, grandchild, or stepgrandchild of the debtor for the taxable year for which funds were paid or contributed;
>
> (B) with respect to the aggregate amount paid or contributed to such program having the same designated beneficiary, only so much of such amount as does not exceed the total contributions permitted under section 529(b)(7) of such Code with respect to such beneficiary, as adjusted beginning on the date of the filing of the petition in a case under this title by the annual increase or decrease (rounded to the nearest tenth of 1 percent) in the education expenditure category of the Consumer Price Index prepared by the Department of Labor; and
>
> (C) in the case of funds paid or contributed to such program having the same designated beneficiary not earlier than 720 days nor later than 365 days before such date, only so much of such funds as does not exceed $5,000[.]

---

(A)(i) the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement; and
(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 365 or 544(a)(3) of this title; or
(B)(i) the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred; and
(ii) but for the operation of this paragraph, the estate could include the interest referred to in clause (i) only by virtue of section 542 of this title; or
(5) any interest in cash or cash equivalents that constitute proceeds of a sale by the debtor of a money order that is made--
(A) on or after the date that is 14 days prior to the date on which the petition is filed; and
(B) under an agreement with a money order issuer that prohibits the commingling of such proceeds with property of the debtor (notwithstanding that, contrary to the agreement, the proceeds may have been commingled with property of the debtor),
unless the money order issuer had not taken action, prior to the filing of the petition, to require compliance with the prohibition.
Paragraph (4) shall not be construed to exclude from the estate any consideration the debtor retains, receives, or is entitled to receive for transferring an interest in liquid or gaseous hydrocarbons pursuant to a farmout agreement.

If the Debtor is asking the Court to assume the Account is of the type described in new Section 541(b)(6), it does not appear that the Bankruptcy Code, as it existed prior to October 17, 2005 provided any rationale for excluding such qualified tuition programs from property of the estate. The new exception added to Section 541(b) by BAPCPA has no relation to the previously existing categories of property that do not become property of the estate. *See In re Sanchez*, 2006 WL 395225 at *1, n. 1 (Bankr. D. Mass. Feb. 14, 2006) ("There is no basis for determining that funds deposited into a Section 529 Plan are excluded from property of the estate prior to the recent amendments to the Bankruptcy Code.").

Bankruptcy Code Section 541(c)(2) states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Section 541(c)(2) would typically be relevant to a "spendthrift trust"[2] or other similar trust that is enforceable under nonbankruptcy law. The function of Section 541(c)(2) seems to be to acknowledge that an enforceable restriction on the transfer of a Debtor's interest would effectively prevent the transfer of such interest from the Debtor to the Debtor's estate at the time of the Debtor's bankruptcy filing so that the Debtor's interest would not constitute estate property. The parties do not allege that the Account constitutes a spendthrift trust or contains any restriction on the Debtor's ability to transfer her beneficial interest in the Account.

---

[2]  A "spendthrift trust" is defined as: "A trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest; a trust by the terms of which a valid restraint is imposed on the voluntary or involuntary transfer." Black's Law Dictionary 1552 (8th Ed. 2004). Under New York law, "all express trusts are presumed to be spendthrift unless the settlor expressly provides otherwise." *Regan v. Ross*, 691 F.2d 81, 86 n. 14 (2d Cir. 1982).

- 5 -

Because the Debtor's interest in the Account is not excluded by any of the above provisions, all of the Debtor's legal or equitable interests in the Account constitute property of the bankruptcy estate that, unless exempt, are subject to administration by the Chapter 7 Trustee.

## II. Exemption of the Account Under New York Law

New York residents can only claim the bankruptcy exemptions permitted by New York law. *See* 11 U.S.C. § 522(b)(1). New York's exemption scheme is found in New York's Debtor & Creditor Law ("DCL") § 282 and the statutes referenced therein. DCL § 282 states:

> Under section five hundred twenty-two of title eleven of the United States Code, entitled "Bankruptcy", an individual debtor domiciled in this state may exempt from the property of the estate, to the extent permitted by subsection (b) thereof, only (i) personal and real property exempt from application to the satisfaction of money judgments under sections fifty-two hundred five and fifty-two hundred six of the civil practice law and rules, (ii) insurance policies and annuity contracts and the proceeds and avails thereof as provided in section three thousand two hundred twelve of the insurance law and (iii) the following property:
>
> 1. Bankruptcy exemption of a motor vehicle. One motor vehicle not exceeding twenty-four hundred dollars in value above liens and encumbrances of the debtor.
>
> 2. Bankruptcy exemption for right to receive benefits. The debtor's right to receive or the debtor's interest in: (a) a social security benefit, unemployment compensation or a local public assistance benefit; (b) a veterans' benefit; (c) a disability, illness, or unemployment benefit; (d) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and (e) all payments under a stock bonus, pension, profit sharing, or similar plan or contract on account of illness, disability, death, age, or length of service unless (i) such plan or contract, except those qualified under section 401, 408 or 408A of the United States Internal Revenue Code of 1986, as amended, was established by the debtor or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose, (ii) such plan is on account of age or length of service, and (iii) such plan or contract does not qualify under section four hundred one (a), four hundred three (a), four hundred three

> (b), four hundred eight, four hundred eight A, four hundred nine or four hundred fifty-seven of the Internal Revenue Code of nineteen hundred eighty-six, as amended.
>
> 3. Bankruptcy exemption for right to receive certain property. The debtor's right to receive, or property that is traceable to: (i) an award under a crime victim's reparation law; (ii) a payment on account of the wrongful death of an individual of whom the debtor was a dependent to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; (iii) a payment, not to exceed seventy-five hundred dollars on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; and (iv) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

(emphasis added). DCL § 282 references Section 5205 of the New York Civil Practice Law and Rules ("CPLR"), under which the Debtor claims the Account is exempt.

### A. Exemption Under CPLR 5205(c)

The Debtor claims that the Account is exempt under either subdivision (c) or (j) of CPLR 5205.

CPLR 5205(c) states:

> **(c) Trust exemption.** 1. Except as provided in paragraphs four and five of this subdivision, all property <u>while held in trust</u> for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.
>
> 2. For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either any trust or plan, which is qualified as an individual retirement account under section four hundred eight or section four hundred eight A of the United States Internal Revenue Code of 1986, as amended, a Keogh (HR-10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans pursuant to sections 402 (a) (5), 403 (a) (4), 408 (d) (3) or 408A of the Internal Revenue Code of 1986, as amended, or a plan that satisfies the requirements of section 457 of the Internal Revenue Code of 1986, as amended, shall be considered a trust which has been

created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) in the case of an individual retirement account plan, an individual who is the settlor of and depositor to such account plan, or (ii) a self-employed individual, or (iii) a partner of the entity sponsoring the Keogh (HR-10) plan, or (iv) a shareholder of the corporation sponsoring the retirement or other plan or (v) a participant in a section 457 plan.

3. All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in paragraph two of this subdivision shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under sections one hundred one to thirteen hundred thirty of title eleven of the United States Bankruptcy Code, as amended.

4. This subdivision shall not impair any rights an individual has under a qualified domestic relations order as that term is defined in section 414(p) of the United States Internal Revenue Code of 1986, as amended or under any order of support, alimony or maintenance of any court of competent jurisdiction to enforce arrears/past due support whether or not such arrears/past due support have been reduced to a money judgment.

5. Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be fraudulent conveyances under article ten of the debtor and creditor law.

(emphasis added). Subsection one of CPLR 5205(c) is the general rule, subject only to subdivisions four (individual rights under a qualified domestic relations order) and five (additions to an exempt asset within certain time periods) of the subdivision, which do not apply here. CPLR 5205(c)(1) requires that the exempt property be (1) "held in trust" (2) for a judgment debtor (meaning the debtor, for bankruptcy purposes), (3) where the trust is created by or proceeded from a person other than the debtor. The parties do not contend that the Account is exempt under CPLR 5205(c)(2) and (3).[3]

---

[3] CPLR 5205(c)(2) states that certain trusts, custodial accounts, annuities and the like that are established as part of an individual retirement account qualified under the Internal Revenue Code "shall be considered a trust which has been created by or which has proceeded from a person other than the judgment

- 8 -

To be exempt under Section 5205(c)(1), the Account must be "held in trust" for the Debtor. The Account is in the name of "Lee T. Quackenbush, as Custodian for Jennifer C. Quackenbush under the NY Uniform Gift to Minors Act". To determine whether the Account is "held in trust" for the purposes of CPLR 5205(c)(1), the Court must consider the nature of the relationship between the Debtor and the Custodian under the Uniform Gifts to Minors Act.

The Account was established under the New York Uniform Gift to Minors Act ("UGMA"), which was codified in Sections 7-4.1 through 7-4.13 of New York's Estates, Powers and Trusts Law ("E.P.T.L.").[4]  E.P.T.L. § 7-4.2(a) states:

> An adult may, during his lifetime, make a gift of a security, a life insurance policy or annuity contract, an interest as a limited partner of a limited partnership, an interest in real property, an interest in tangible personal property or money to a person who is a minor on the date of the gift.

Such a gift "is irrevocable and conveys to the minor indefeasibly vested legal title to the security, life insurance policy, annuity contract, interest as a limited partner in a limited partnership, interest in real property, interest in tangible personal property or money given . . . ."  E.P.T.L. § 7-4.3(a).

> A gift to a minor of a bank account under the New York Uniform Gifts to Minors Act . . . has a markedly different legal effect from the creation of a Totten trust. The gift is irrevocable and conveys all of the donor's rights to the infant with no rights in the infant's guardian except as provided by the Act (EPTL 7-4.2).

---

debtor," even where the debtor is the settlor, a fact that would negate its exempt status under CPLR 5205(c)(1) due to the requirement that the trust be "created by or proceeded from a person other than the judgment debtor"; CPLR 5205(c)(3) states that the items listed in CPLR 5205(c)(2) "shall be conclusively presumed to be spendthrift trusts" and receive the treatment given to spendthrift trusts under New York Law and the Bankruptcy Code.

[4]   In 1996 the New York State Legislature enacted the Uniform Transfers to Minors Act, codified in E.P.T.L. § 7-6 *et seq.* and repealed the Uniform Gift to Minors Act. The Uniform Gift to Minors Act continues to apply to transfers, such as this one, that were made before December 31, 1996.

*In re Miller's Estate*, 84 Misc.2d 807, 810, 377 N.Y.S.2d 944, 947-948 (N.Y. Sur. 1975).

New York cases examining the UGMA have found that it is "essentially a procedural mechanism for making [i]nter vivos gifts of securities or money to minors, and is designed to simplify the complex of legal and practical difficulties which otherwise accompany such a gift (e.g., trust agreements, restrictions on permissible investments, formal accountings, etc.)." *Gordon v Gordon*, 70 A.D.2d 86, 92, 419 N.Y.S.2d 284 (N.Y. App. Div. 2d. Dep't. 1979).

> The structure of the UGMA is superficially analogous to a trust, with the custodian in the role of trustee. However, the minor obtains indefeasibly vested legal title to the property which is gifted in the manner prescribed by statute. In addition, once made, the gift is irrevocable. **Thus, unlike a trust, Totten or otherwise, the donor retains no rights, legal or equitable, to the conveyed property.**

*Id.* at 92 (emphasis added); *see also In re Altchek,* 124 B.R. 944, 958 (Bankr. S.D.N.Y. 1991) (Schwartzberg, J.) (transfer of debtor's interest in partnership properties to his children pursuant to UGMA transferred all legal and equitable interests in the property so that those properties and their proceeds did not constitute property of the donor's bankruptcy estate).

Other courts examining the UGMA have found a deliberate legislative intent to give the UGMA a structure and character that is distinct from a trust relationship:

> When first adopted in New York as article 8-A of the Personal Property Law, the act did contain language indicating a possible *trust* relationship since it specified that the custodian "shall hold a power in trust" and in addition "all the rights, powers and duties. . . . . . . . . . of a guardian of the property of an infant" with some exceptions there noted (former Personal Property Law, § 266, subd 1). *This language has since been omitted* and it is only a custodian who is compensated for his services (as a trust company or one who is also a guardian) that is today "subject to the same liabilities as a guardian of the estate of a minor" but the act adds "except as the custodian's powers and duties under this part are different from those of such a guardian" (EPTL 7-4.4, subd [f]).

*Matter of Levy*, 97 Misc.2d 582, 584, 412 N.Y.S.2d 285 (N.Y. Sur. 1978) (alteration and emphasis in the original).

Moreover, although the custodian is given certain duties and powers in E.P.T.L. § 7-4.4, subsection (d) of that section states: "To the extent that the custodial property is not so expended, the custodian shall deliver or pay it over to the minor on his attaining the age of eighteen years. . . ." The Debtor in this case is an adult. In *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 n. 3 (2d Cir. 2000), the Second Circuit held that upon reaching age 18, a donee received indefeasibly vested title to property that he received as a gift from his father under the UGMA; thus, his father "retained no interest in the account". Citing the observation in *Gordon v. Gordon, supra,* that the UGMA is "superficially analogous to a trust," the Second Circuit found "no basis in New York law for concluding that the custodian retains any power to continue administration of the account beyond the time the owner reaches the ages of majority." 222 F.3d at 59.

Based upon the foregoing, the Court concludes that the Account is not exempt under CPLR 5205(c) because the Debtor, having reached the age of majority, is both the legal and equitable owner. It does not appear that the Account is "held in trust" for the Debtor by the donor, Lee Quackenbush, or by anyone else. Although the Debtor claims that the funds in the Account are "solely used for education," there does not appear to be any restriction on the Debtor's ability to use the funds in the Account for any purpose she pleases. In short, nothing about the structure or current status of the Account as of the date of the bankruptcy filing that suggests it is subject to a trust relationship that would qualify the Account for exemption under CPLR 5205(c).

### B. Exemption Under CPLR 5205(j)

CPLR 5205(j) states:

**(j) Exemption for New York state college choice tuition savings program trust fund payment monies.** Monies in an account <u>created pursuant to article fourteen-A of the education law</u> are exempt from application to the satisfaction of a money judgment as follows:

1. one hundred percent of monies in an account established in connection with a scholarship program established pursuant to such article is exempt;

2. one hundred percent of monies in an account is exempt where the judgment debtor is the account owner and designated beneficiary of such account and is a minor; and
3. an amount not exceeding ten thousand dollars in an account, or in the aggregate for more than one account, is exempt where the judgment debtor is the account owner of such account or accounts.

For purposes of this subdivision, the terms "account owner" and "designated beneficiary" shall have the meanings ascribed to them in article fourteen-A of the education law.

(emphasis added). CPLR 5205(j) is a specific exception that applies only to "an account created pursuant to article fourteen-A of the education law". *See* New York Education Law § 695 *et seq.* Article 14-A of the Education Law became effective September 10, 1997, more than eight years after the Account was in existence. Thus, the Account could not have been "created pursuant to" Article 14-A of the New York Education Law. The Court has not been able to find a statute similar to Article 14-A that may have existed at the time the Account was created, and Section 695 of the New York Education Law states that the New York State College Choice Tuition Savings Program was "established" by enactment of that Article.

### C. Applicability of DCL § 283(2)

Finally, the Debtor argues that even if the Account is not exempt under CPLR 5205, the funds in the account may be exempted under DCL § 283(2). DCL § 283 provides:

- 12 -

> **§ 283. Aggregate individual bankruptcy exemption for certain annuities and personal property**
>
> 1. General application. The aggregate amount the debtor may exempt from the property of the estate for personal property exempt from application to the satisfaction of a money judgment under subdivision (a) of section fifty-two hundred five of the civil practice law and rules and for benefits, rights, privileges, and options of annuity contracts described in the following sentence shall not exceed five thousand dollars. Annuity contracts subject to the foregoing limitation are those that are: (a) initially purchased by the debtor within six months of the debtor's filing a petition in bankruptcy, (b) not described in any paragraph of section eight hundred five (d) of the Internal Revenue Code of nineteen hundred fifty-four, and (c) not purchased by application of proceeds under settlement options of annuity contracts purchased more than six months before the debtor's filing a petition in bankruptcy or under settlement options of life insurance policies.
>
> 2. Contingent alternative bankruptcy exemption. <u>Notwithstanding section two hundred eighty-two of this article, a debtor, who</u> (a) <u>does not elect, claim, or otherwise avail himself of an exemption described in section fifty-two hundred six of the civil practice law and rules</u>; (b) utilizes to the fullest extent permitted by law as applied to said debtor's property, the exemptions referred to in subdivision one of this section which are subject to the five thousand dollar aggregate limit; and (c) does not reach such aggregate limit, <u>may exempt cash</u> in the amount by which five thousand dollars exceeds the aggregate of his exemptions referred to in subdivision one of this section or in the amount <u>of two thousand five hundred dollars</u>, whichever amount is less. <u>For purposes of this subdivision, cash means currency of the United States at face value, savings bonds of the United States at face value, the right to receive a refund of federal, state and local income taxes, and deposit accounts in any state or federally chartered depository institution.</u>

(emphasis added).

It should be observed that the Account does not appear to contain "cash" as defined in DCL § 283(2). The Account does not contain "currency of the United States at face value," "savings bonds of the United States at face value," or the right to receive income tax refunds. The Account contains "shares" and is described in the application as a "Systematic Investment Plan".

- 13 -

The record does not show that the Account can be characterized as a "deposit account" in a "state or federally chartered depository institution." "Deposit account" is defined in Article 9 of New York's Uniform Commercial Code ("<u>U.C.C.</u>") as: "a demand, time, savings, passbook, or similar account maintained with a bank. The term <u>does not include investment property</u> or accounts evidenced by an instrument." U.C.C. 9-102(a)(29). The U.C.C. defines "investment property" as "a security, whether certificated or uncertificated, security entitlement, securites account, commodity contract, or commodity account." U.C.C. 9-102(a)(49). In the absence of a more direct explanation for the meaning of "deposit account," the Court concludes that the term does not apply to the Account at issue here.

The Debtor cites to *In re Sullivan*, 31 B.R. 125, 127 (Bankr. N.D.N.Y. 1983), in which the debtor was allowed to set aside a transfer of insurance proceeds under Bankruptcy Code Section 522(h)[5] and then exempt the liquidated insurance proceeds pursuant to DCL § 283(2). The court in *Sullivan* placed great weight on the fact that the Debtor was "acting as the Trustee" in that case and sought to liquidate the insurance proceeds "for the benefit of the estate, and claiming as exempt any of the subject proceeds to the extent allowed under [DCL § 283(2)] since the Trustee failed to interpose either a counterclaim or cross-claim against the parties." *Id.* at 127. The court overruled the argument of an objecting creditor that the debtor could not exempt the proceeds from

---

[5] 11 U.S.C. § 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
(2) the trustee does not attempt to avoid such transfer.

- 14 -

the subject insurance settlement because the settlement was not "cash" within the meaning of DCL § 283(2):

> The Court disagrees with this position. By virtue of § 522(h) of the Code, the Debtor may liquidate the insurance settlement as the Trustee would for the benefit of the estate. Once liquidated, the proceeds are clearly "cash" and the Debtor may claim exempt as much as is allowed by the statute.

*Id*. Another case that reads the definition of "cash" in DCL § 283(2) expansively is *In re Bartoszewski*, 36 B.R. 424 (Bankr. N.D.N.Y. 1984), which held that a vested future right to payment of a monetary inheritance in existence on the date of the bankruptcy petition constituted cash within the definition in DCL § 283(2). *Sullivan* and *Bartoszewski* have been distinguished by other courts or limited to their facts. For example, in *In re Abdo,* 65 B.R. 56, 57 (Bankr. N.D.N.Y. 1986), Judge Gerling held:

> Whatever equitable concerns were presented in *Bartoszewski* . . . compelling the court to pass over the clear language of [DCL § 283(2)], are not now under consideration. The Court believes the *Bartoszewski* decision, resulting as it does from the express application of the Court's equity powers, is to be strictly limited to the facts and circumstances presented, for accepted principles of statutory construction and interpretation do not lead to the conclusion reached therein.

The prevailing view is that the definition of "cash" in DCL § 283(2) is a narrow one. *See In re Abdo*, *supra* (Debtor's interest in mortgage payments to be received are not cash as defined in DCL § 283(2) and cannot be claimed as exempt property); *In re Doyle,* 42 B.R. 615 (Bankr.W.D.N.Y.1984) (debtor's interest in a bond fund did not constitute cash within meaning of DCL § 283(2)); *In re Bartley,* 33 B.R. 768 (Bankr.E.D.N.Y.1983) (debtor's shares of corporate stock were not cash, and, therefore, not exempt property under DCL § 283(2)). In *In re DeVries*, 76 B.R. 917, 918 (Bankr. N.D.N.Y. 1987), Judge Gerling denied the Debtor's exemption claim under DCL § 283(2) for post-petition insurance proceeds received on account of a pre-petition automobile property damage claim because "[a]t the time of filing, the Debtors held no more than a liquidated,

contingent claim against a third party for damages inflicted upon their exempt automobile."

> As the time of filing is the benchmark for purposes of determining the exempt nature of property of the estate, then a right to receive the payments cannot constitute "cash" within the definition of [DCL § 283(2)]. The only "right to receive" recognized by the New York State Legislature as a cash exemption involves a debtor's receipt of federal, state, and local income tax returns. Had the Legislature intended the broader scope urged by the Debtors, the statute could have easily been drafted to say so.

*Id.* at 919. *In re Lowe*, 252 B.R. 614, 626 (Bankr. W.D.N.Y. 2000), Judge Kaplan declined to create an exemption for the debtor for a profit-sharing fund as a form of accrued but unpaid "receivable" under DCL § 283(2) because that section "recognizes the difference between 'cash' and the right to receive cash that is not 'in hand'." In *In re Struebing*, 257 B.R. 641, 642 (Bkrtcy. W.D.N.Y. 2000), Judge Kaplan explained that his ruling in *Lowe* was intended to reject "a line of reasoning which, if accepted, would provide an unlimited exemption for [funds in a profit-sharing or deferred-compensation plan] even if they were as freely available as 'cash in the bank'."

Based upon the foregoing discussion, this Court finds that the exemption in DCL § 283(2) for "cash" does not extend to the shares held in this Account.

## **Conclusion**

For the foregoing reasons, the Chapter 7 Trustee's objection to the Debtor's claimed exemption in the Account is sustained. The Chapter 7 Trustee is requested to promptly submit an order consistent with this decision.

Dated: Poughkeepsie, New York
     April 5, 2006              /s/ Cecelia Morris
                                    CECELIA G. MORRIS
                                    UNITED STATES BANKRUPTCY JUDGE